**Robert O. GILMORE, Jr., Appellant,**

v.

**The PEOPLE OF the STATE OF CALIFORNIA and Warden Lawrence E. Wilson et al., Appellees.**

No. 20466.

United States Court of Appeals
Ninth Circuit.

Aug. 4, 1966.

---

Robert O. Gilmore, Jr., Tamal, Cal., in pro. per.

Thomas C. Lynch, Atty. Gen., Robert R. Granucci, Jay S. Linderman, Deputy Attys. Gen., San Francisco, Cal., for appellee.

Before BROWNING, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appeal from an order denying a writ of habeas corpus. Gilmore pleaded guilty in California Superior Court to two counts of a seven-count information. The offenses are rape (Calif.Pen.Code § 261, subd. 3), for which the penalty is imprisonment for not less than 3 years, (Calif.Pen.Code § 264) and robbery (Calif.Pen.Code § 211) for which the penalty is not less than 5 years (Calif. Pen.Code § 213, subd. 1). Sentences were concurrent. The other 5 counts, which included kidnapping (Calif.Pen. Code § 207), for which the punishment may be death or life imprisonment without possibility of parole (Calif.Pen.Code § 209), were dismissed.

Gilmore claims that a "confession" [1] was obtained from him unlawfully in that he was not at the time represented by counsel and was "brow-beaten" and "inflicted with brutality" by the police. This contention is not available to him. The evidence was not used to convict him. His conviction rests solely upon his guilty plea. Hardee v. Wilson, 9 Cir., 1966, 363 F.2d 848 (June 29, 1966); Fleming v. Klinger, 9 Cir., 1966 363 F.2d 378 (June 28, 1966); Spry v. Oberhauser, 9 Cir., 1966, 361 F.2d 391 (May 20, 1966); Wallace v. Heinze, 9 Cir., 1965, 351 F.2d 39; Davis v. United States, 9 Cir., 1965, 347 F.2d 374; Harris v. United States, 9 Cir., 1964, 338 F.2d 75; Hoffman v. United States, 9 Cir., 1964, 327 F.2d 489; Thomas v. United States, 9 Cir., 1961, 290 F.2d 696; Berg v. United States, 9 Cir., 1949, 176 F.2d 122.

The only question open to Gilmore is whether his guilty plea was freely and voluntarily entered. Nowhere in his petition, in what he designates as an "application" [2] attached thereto, in his traverse [3] to appellee's return, or in his "supplement" [4] to the traverse, does he assert that the claimed violation of the *Escobedo* rule [Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977], or the claimed brow-beating, or any of numerous nonjurisdictional and non-constitutional matters [5] that he discusses, brought about his guilty plea. A careful reading of these lengthy documents reveals that the guilty plea itself is attacked on only three grounds.

The first is that Gilmore was afraid that if he went to trial he might get the death penalty. This was a real possibility. He was charged with an offense carrying that penalty. The fact that he was confronted with a hard choice, and that he chose what he thought was the lesser of two evils, would not make his plea involuntary. The second is that his retained counsel made a deal with the prosecutor whereby the latter agreed to and did dismiss five counts—at least one of which was for kidnapping and carried a possible death penalty—in exchange for the plea. This, as we have previously held, is not improper, and, standing alone, does not render the plea of guilty invalid. Cortez v. United States, 9 Cir., 1964, 337 F.2d 699.

The third assertion is that Gilmore was deceived by his retained counsel into believing that he would receive, in exchange for his plea, a one year jail sentence instead of being sentenced, as he actually was, to state prison for the term prescribed by law. He does not directly charge that either the judge or the prosecutor was a party to any such understanding. At most he says that his attorney told him that the judge had promised such leniency, and that the

---

1. He did not, in fact, confess. Some of his statements, however, were incriminating, others were exculpatory. As to future cases, these distinctions no longer have meaning. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We do not consider them material here.

2. The petition itself is upon a form prescribed by the rules of the District Court, and is duly verified. The "Application" is a 26 page document, a mixture of factual assertions and argument. We treat it as part of the petition because it, too, is verified.

3. The traverse is similar to the "application." It is 58 pages long, and is likewise verified.

4. The "supplement" is like the traverse, and is 14 pages long. It, too, is verified.

5. Like many prisoners who proceed in pro. per. Gilmore has filled his papers with factual assertions and legal citations that present no issue cognizable in habeas corpus, such as the sufficiency, credibility, and admissibility of testimony given at the preliminary hearing, and other matters. We do not discuss them, as it would serve no useful purpose to do so. Some of his contentions might have been available to him had he gone to trial; he did not do so. Others would not. None is available here. The trial court did not hold a hearing. We therefore assume the truth, for the purpose of this decision, of such allegations as are relevant and material.

prosecutor had agreed to the same deal. It is also implicit in the allegations that Gilmore did not agree to the deal, at least if the claimed promise of leniency were not a part of it. It has been held, and we agree, that mere disappointment at the severity of the sentence received upon a plea of guilty is no ground for habeas corpus or other similar relief, even where defendant's counsel has expressed an opinion that leniency will be granted. Pinedo v. United States, 9 Cir., 1965, 347 F.2d 142; United States v. Parrino, 2 Cir., 1954, 212 F.2d 919; Monroe v. Huff, 1944, 79 U.S.App.D.C. 246, 145 F. 2d 249. But here, allowing for Gilmore's lack of skill in drafting his allegations it is at least arguable that more than mere disappointment is involved. A flat misrepresentation by his attorney is asserted. Participation in a promise of leniency, and breach of that promise, by both judge and prosecutor are at least implied. We would feel more comfortable about the case if the court had held a hearing on these charges. If the judge or the prosecutor made a promise, and if this were a federal conviction, the case would fall within the rule in Machibroda v. United States, 1962, 368 U.S. 487, 489, 493, 82 S.Ct. 510, 7 L.Ed.2d 473. We entertain some doubt, as the trial judge did, that Gilmore's charges are true. But the trial court did not and we do not have the record of what took place at Gilmore's sentencing, and in any event, it probably would not fully answer the charge, which appears to allege matters occurring outside the record. We conclude that the trial judge should have held a hearing limited to those allegations that relate to the voluntary character of Gilmore's plea. See Zaffarano v. United States, 9 Cir., 1962, 306 F.2d 707; ibid, 1964, 9 Cir., 330 F.2d 114.

We do not now decide whether all the rules developed by the federal courts to determine the validity of a plea of guilty by one charged with a federal offense are equally applicable to a plea by one charged in a state court with a state offense, either under the due process clause of the fourteenth amendment or under other provisions of the federal constitution made applicable to the states by that amendment. It will be time enough to decide such questions if, after a hearing, they are presented by the facts found. Certainly, if Gilmore's plea was voluntary under federal constitutional standards, we can ask no more of the state.

Gilmore has also filed two applications, ex parte, for bail. We do not ordinarily grant bail to state prisoners seeking habeas corpus; we do not think that we should in this case, assuming that we have the power. Nothing in the Bail Reform Act of 1966, P.L. 89–465, 80 Stat. 214, requires us to grant bail in such cases. Both applications are denied.

The order is reversed, with directions that further proceedings, consistent with this opinion, be held.